**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

<table>
<tr><td>CHAMBERS OF<br>**CHRISTINE P. O'HEARN**<br>UNITED STATES DISTRICT JUDGE</td><td>**MITCHELL H. COHEN BUILDING &**<br>**U.S. COURTHOUSE**<br>**4TH & COOPER STREETS**<br>**ROOM 6050**<br>**CAMDEN, NJ 08101**<br>**856-757-5167**</td></tr>
</table>

May 11, 2026

**VIA CM/ECF**

**Kathy Manley**
LAW OFFICE OF KATHY MANLEY
26 Dinmore Road
Selkirk, NY 12258

**Michael E. Riley**
LAW OFFICES OF RILEY & RILEY
Executive Court
2 Eves Drive, Suite 109
Marlton, NJ 08053

 *On Behalf of Defendant Shain Duka.*

**Jeffrey Brian Bender**
**Norman Joel Gross**
**William E. Fitzpatrick**
OFFICE OF THE U.S. ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101

**Michael A. Hammer**
OFFICE OF THE U.S. ATTORNEY
970 Broad Street, Suite 700
Newark, NJ 07102

**John Williams Van Lonkhuyzen**
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION - NYFO
26 Federal Plaza, Room 3630
New York, NY 10278

 *On Behalf of Government.*

## LETTER ORDER

**Re:**    *United States v. Shnewer et al.*
        **Criminal Action No. 07-00459-4**

Dear Counsel:

This matter comes before the Court by way of Defendant's Motion for Reduction of Sentence Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 578). For the reasons set forth below, Defendant's Motion is **DENIED.**

### I.    Background[1]

Defendant Shain Duka is serving a life sentence following his conviction for conspiracy to murder members of the United States military. In 2008, after a lengthy jury trial, a jury found Defendant guilty of conspiracy to murder members of the United States military in violation of 18 U.S.C. §§ 1114 and 1117. (ECF No. 371). The charges arose from a plot, developed between 2006 and 2007, involving Defendant and several co-defendants to carry out an armed attack against the United States Army installation at Fort Dix in New Jersey. *See Duka*, 671 F.3d at 333–35.

The evidence presented at trial established that Defendant and several associates became interested in violent jihad and discussed attacking members of the United States military. Over the course of approximately sixteen months, members of the group engaged in weapons training, including shooting practice at firing ranges, and discussed possible attacks against military targets. *Id*. During this period, the conspirators attempted to obtain firearms and other weapons and conducted surveillance and research related to Fort Dix, including obtaining a map of the installation for planning purposes. *Id.*

The investigation was conducted with the assistance of confidential informants who recorded numerous conversations with members of the group regarding their plans and intentions. *Id.* The evidence included recordings in which members of the conspiracy discussed attacking Fort Dix and expressed their willingness to participate in such an attack. *Id.* Law enforcement ultimately arrested Defendant and his co-defendants in May 2007. *Id.*

On April 28, 2009, the Honorable Robert B. Kugler sentenced Defendant to life imprisonment.[2] (ECF No. 419). The Court concluded that a life sentence was warranted in light of

---

[1] This case has a lengthy factual and procedural history, which has been set forth in detail in this Court's prior opinions and the Third Circuit's published opinions. *See, e.g., United States v. Duka*, 671 F.3d 329, 333–36 (3d Cir. 2011); *Duka v. United States*, No. 13-3664, 2015 WL 5768786, at *1–3 (D.N.J. Sept. 30, 2015); *Duka v. United States*, 27 F.4th 189, 191–94 (3d Cir. 2022). The Court incorporates that background here and recounts only those facts necessary to resolve the present Motion.

[2] This matter was thereafter reassigned to the undersigned. (ECF No. 566).

the seriousness of the offense, the nature of the conspiracy to attack a United States military installation, and the applicable advisory Sentencing Guidelines. Defendant appealed his conviction and sentence, and the Court of Appeals for the Third Circuit affirmed. *Duka*, 671 F.3d at 356.

Defendant is currently serving his life sentence in Bureau of Prisons ("BOP") custody and, as of the filing of this Motion, has served eighteen years. On October 17, 2025, Defendant moved for a reduction in sentence to time served pursuant to § 3582(c)(1)(A). (ECF No. 578). The Government filed opposition on January 13, 2026, (ECF No. 602), and Defendant filed a reply on February 2, 2026, (ECF No. 603).

## II.      Legal Standard

The First Step Act permits criminal defendants to seek compassionate release from the sentencing court for "extraordinary and compelling reasons." *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting § 3582(c)(1)(A)(i)). Before filing such a motion, however, a defendant must first request relief from the BOP and either exhaust administrative remedies or wait thirty days after the request is submitted. *Id*. Thus, a defendant seeking a sentence reduction under the First Step Act bears the burden of showing both that he has exhausted administrative remedies and that extraordinary and compelling reasons justify compassionate release.[3] *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (citing *United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)).

If the Court finds that extraordinary and compelling reasons warrant a reduction, it may reduce the defendant's sentence under § 3582(c)(1)(A) if the reduction is consistent with applicable policy statements issued by the Sentencing Commission and supported by the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Balter*, No. 93-536, 2024 WL 2105553, at *3 (D.N.J. May 9, 2024) (citation omitted), *aff'd*, 2024 WL 4274350 (3d Cir. Sept. 24, 2024). The § 3553(a) factors include, among other things, the nature and circumstances of the offense, the defendant's history and characteristics, the need for deterrence and protection of the public, the applicable sentencing range, relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citations omitted).

Compassionate release remains discretionary. Even where a defendant establishes eligibility for relief, a district court may deny a reduction if it concludes that the § 3553(a) factors do not support a reduced sentence. *United States v. Alexander*, No. 23-1011, 2023 WL 4198042, at *1 (3d Cir. June 27, 2023) (citations omitted). The defendant bears the burden of establishing extraordinary and compelling reasons for release by a preponderance of the evidence. *United States v. Mims*, No. 19-00527, 2021 WL 4059851, at *2 (D.N.J. Sept. 7, 2021) (citation omitted).

## III.     Discussion

---

[3] Because there is no dispute that Defendant has exhausted his administrative remedies, (Gov't Opp., ECF No. 602 at 35 n.9), the Court's analysis is confined to whether extraordinary and compelling reasons exist to justify compassionate release.

### A.      Scope of Compassionate Release Review

As an initial matter, the Court declines Defendant's invitation to use this compassionate-release motion as a vehicle to recast the trial evidence, retry the conspiracy count, or revisit issues concerning the sufficiency, weight, or characterization of the evidence supporting his conviction. Although Defendant states that he is "not challenging the convictions," (ECF No. 578-1 at 2), substantial portions of his Motion argue that the underlying conspiracy lacked a defined target, location, or time frame; that the Government shifted theories at trial; that the Duka brothers did not know about any plot to attack Fort Dix; and that the only evidence connecting them to such a plot consisted of later-repudiated statements by co-defendant Mohamad Shnewer. (*Id.* at 2–7). Defendant relies in particular on a 2009 letter from Shnewer stating that the Duka brothers were "clueless" about what Shnewer had said to confidential informant Mahmoud Omar. (*Id.* at 3 n.1). Defendant's reply presses the same point, asserting that the Government's factual account "relies heavily" on "incredible and discredited statements" by Shnewer. (ECF No. 603 at 1).

Those arguments are not properly before the Court on a motion under § 3582(c)(1)(A). A compassionate-release motion permits a court to determine whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with the § 3553(a) factors. It does not reopen the jury's verdict or permit a defendant to relitigate factual disputes resolved at trial and on collateral review. *See United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019) (explaining that § 3582(c)(1)(A) "provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity"); *United States v. Murphy*, No. 21-906, 2024 WL 887538, at *4 (D.N.J. Feb. 29, 2024) ("A motion for compassionate release is not the proper vehicle to relitigate a decision previously made, to raise an issue that could have and should have been raised on appeal, or to mount a post-conviction challenge akin to 28 U.S.C. § 2255."); *see also United States v. Taylor*, No. 10-239, 2025 WL 1866263, at *4 (N.D. Ill. July 7, 2025) ("[A] compassionate release motion is not the proper vehicle to raise or relitigate purported trial court errors."); *United States v. Tragas*, No. 09-20023-10, 2020 WL 5064383, at *3 n.2 (E.D. Mich. Aug. 27, 2020), *aff'd*, No. 20-1886, 2021 WL 4205168 (6th Cir. Aug. 4, 2021) (holding that defendant is not permitted "to relitigate the evidence against her on a motion for compassionate release.").

Nor does the procedural history of this case leave room for the Court to treat these arguments as unresolved. On direct appeal, the Third Circuit described the case as involving "a plot to attack United States military bases in New Jersey, Pennsylvania, and Delaware, particularly the United States Army Base at Fort Dix," and held that the Government presented "extensive evidence of the plot," including recorded conversations, informant testimony, and a recorded controlled weapons transaction. *Duka*, 671 F.3d at 333. The Third Circuit affirmed the conspiracy convictions, concluding that defendants' appellate arguments lacked merit and noting this was an "extraordinarily complex trial." *Id*. The court also summarized the evidence against the Duka brothers specifically: they took multiple trips to the Poconos "to train for jihad," encouraged one of the government informants to join them, praised jihadist-propaganda videos, and later ordered nine fully automatic weapons. *Id.* at 334–35.

The Third Circuit again rejected efforts to disturb the convictions in *Duka v. United States*, 27 F.4th 189 (3d Cir. 2022). There, the court recounted that Dritan and Shain Duka had "launched

several unsuccessful challenges to their convictions," including direct appeal, § 2255 proceedings, Federal Rule of Civil Procedure 60(b)(6) motions, and later *Davis*-related proceedings. *Id.* at 192–94. The 2022 opinion specifically notes that the Rule 60(b)(6) motions challenged the jury instructions on *mens rea* for conspiracy to commit murder; Judge Kugler denied those motions; Dritan voluntarily withdrew his appeal; and the Third Circuit denied Shain's request for a certificate of appealability because the "correctness of the challenged jury instruction is not debatable." *Id.* at 193. On remand in the *Davis* proceedings, Dritan and Shain also asserted ineffective assistance and actual innocence as to the conspiracy-to-murder conviction; Judge Kugler rejected those arguments, finding among other things that they had presented "no new evidence that was not available at trial," and the Third Circuit declined to expand the certificate of appealability to include those claims. *Id.* at 193–94, 196–97.

Accordingly, to the extent Defendant argues that the § 1117/§ 1114 conspiracy conviction was unsupported because there was no specified target, location, or time frame, or because the Duka brothers allegedly did not know of the Fort Dix plot, those arguments are collateral attacks on the conviction. They are not extraordinary and compelling reasons for relief under § 3582(c)(1)(A). The Court therefore will not reconsider the jury's verdict, reweigh the trial evidence, or revisit the prior determinations of this Court and the Third Circuit. The Court instead necessarily accepts the conviction as valid, begins with that premise, and considers Defendant's Motion only within the proper compassionate-release framework: whether Defendant has established extraordinary and compelling reasons for a reduction and, if so, whether the § 3553(a) factors warrant the requested reduction. With that limitation in mind, the Court considers Defendant's asserted grounds for relief without crediting any argument that depends on the assertion that Defendant was wrongly convicted or that the jury and prior courts misapprehended the nature of the conspiracy.

### B.    Extraordinary and Compelling Reasons

#### i.    Length of Sentence

Defendant's principal argument is that his life sentence is now so extremely excessive, in light of the nature of the investigation, the asserted vagueness of the conspiracy, the effect of the terrorism enhancement, and asserted disparities with more recent terrorism sentences, that it constitutes an extraordinary and compelling reason for relief under § 3582(c)(1)(A). (Mot., ECF No. 578-1 at 19–32; Reply, ECF No. 603 at 2–12). The Government responds that, however framed, Defendant's argument is ultimately a challenge to the length of a lawfully imposed sentence, which is foreclosed by binding Third Circuit precedent. (Gov't Opp., ECF No. 602 at 43–50). The Court agrees with the Government.

The starting point is *United States v. Andrews*, where the Third Circuit held that "[t]he duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance." 12 F.4th 255, 260–61 (3d Cir. 2021). That holding was not limited to any one sentencing aspect in isolation. Rather, it rested on the broader principle that there is ordinarily nothing "extraordinary" about requiring a defendant to serve the sentence lawfully imposed for his crimes. *Id.* (citation omitted). Defendant argues that *Andrews* has been narrowed by the Sentencing Commission's 2023 amendments to U.S.S.G. § 1B1.13 and by *United States v. Rutherford*, 120

F.4th 360 (3d Cir. 2024), such that this Court may now consider his sentence-length arguments under the catchall provision in § 1B1.13(b)(5).[4] (Reply, ECF No. 603 at 2–6).

The Court is not persuaded. *Rutherford* addressed whether the Commission could authorize relief based on certain nonretroactive changes to § 924(c); it did not disturb *Andrews*'s broader holding that the duration of a lawful sentence, standing alone, is not extraordinary and compelling. *See Rutherford*, 120 F.4th at 376–78. And courts within this Circuit continue to rely on *Andrews* in rejecting efforts to recast ordinary sentence-length challenges as compassionate-release claims.[5] *See, e.g., United States v. McNeill*, No. 06-373, 2025 WL 2173290, at *3–4 (W.D. Pa. July 31, 2025); *Thomas*, 2025 WL 2300921, at *5; *United States v. Harrison*, No. 12-192-1, 2025 WL 3041870, at *3 (E.D. Pa. Oct. 31, 2025); *United States v. Crusel*, No. 24-349, 2026 WL 709861, at *3 (D.N.J. Mar. 13, 2026).

Even assuming, however, that the catchall provision leaves some room to consider arguments about the circumstances leading to a sentence, Defendant still has not demonstrated circumstances "similar in gravity" to those enumerated in § 1B1.13(b)(1)–(4). § 1B1.13(b)(5). Defendant relies heavily on *United States v. Cromitie* and similar sting-operation cases. (Mot., ECF No. 578-1 at 21–23). But *Cromitie* involved an FBI-orchestrated plot in which the district court concluded the government had effectively invented the conspiracy and structured it to trigger a 25-year mandatory minimum for defendants whom the court described as "impoverished small time grifters and drug users/street level dealers." No. 09-558-01, 2024 WL 216540, at *3, *6–8 (S.D.N.Y. Jan. 19, 2024). This case is materially different.

First, Defendant was not sentenced pursuant to a mandatory minimum. Second, there can be no reasonable argument that the conspiracy was engineered solely by the Government. Defendant's argument that this "was a sting operation with no defined plot – it was simply a (very brief) agreement to do something somewhere at some future point in time," (Mot., ECF No. 578-1 at 1), is belied by the record. Defendant received a discretionary sentence after a lengthy trial at which the evidence established a conspiracy to murder members of the United States military that originated with, and was developed by, the defendants. The record, as affirmed by the Third Circuit, reflected far more than idle talk: the conspirators discussed attacking military targets, engaged in firearms training, attempted to acquire substantial weaponry, and conducted surveillance and research related to Fort Dix. *See Duka*, 671 F.3d at 332–35. Whatever distinctions Defendant seeks to now draw decades later about the exact contours of the plot, this was not a case

---

[4] Defendant is not eligible for a reduction based on an "unusually long sentence" under § 1B1.13(b)(6) because there has been no change in law. *See United States v. Thomas*, No. 12-378, 2025 WL 2300921, at *4 (D.N.J. Aug. 11, 2025).

[5] While Defendant cites *United States v. Berry*, No. 10-00051, 2024 WL 3927260 (D.N.J. Aug. 23, 2024); *United States v. Skeeters*, No. 05-530-1, 2024 WL 992171 (E.D. Pa. Mar. 7, 2024); *United States v. Edmond*, 730 F. Supp. 3d 146 (M.D. Pa. 2024); *United States v. Donald*, No. 21-41, 2024 WL 4581209 (D. Del. Oct. 24, 2024); and *United States v. Robinson*, No. 06-318, 2025 WL 841014 (W.D. Pa. Mar. 18, 2025) for his argument that *Andrews* was abrogated by the amended guidelines, (Reply, ECF No. 603 at 3), these cases are distinguishable in that those courts did not consider challenges solely to sentence length under (b)(5).

in which the Government merely supplied a crime to otherwise unwilling or trivial actors. *See also United States v. Washington*, No. 13-171-2, 2025 WL 270058, at *12–13 (E.D. Pa. Jan. 22, 2025) (distinguishing *Cromitie* and denying relief where the defendant was an active participant in the charged scheme); *United States v. Al Kassar*, No. 07-354-01, 2024 WL 4476009, at *2 (S.D.N.Y. Oct. 11, 2024) (same).

Defendant's reliance on other cases where compassionate release was granted or sentencing comparisons is likewise unavailing. He points to recent cases in which courts granted compassionate release or imposed lesser sentences for terrorism-related conduct, and he argues that his life sentence is therefore out of step with current practice. (Mot., ECF No. 578-1 at 27–32). But selective comparisons to sentences modified or imposed by other courts in other cases do not establish an extraordinary and compelling reason for release. *See McNeill*, 2025 WL 2173290, at *4; *United States v. Gladney*, No. 18-0079, 2024 WL 4682315, at *4 (W.D. La. Nov. 4, 2024). Terrorism cases are highly fact-specific, and the examples cited by both sides only underscore that point. The Government identifies recent cases in which district courts imposed life or similarly severe sentences for terrorism-related conspiracies, including *United States v. Abdullah*, No. 20-cr-677 (S.D.N.Y.), *United States v. Kelley*, No. 22-cr-118 (E.D. Tenn.), and *United States v. Melzer*, No. 20-cr-314 (S.D.N.Y.), as well as appellate decisions affirming life or near-life terms in other terrorism cases. (Gov't Opp., ECF No. 602 at 48–49). Defendant responds that some of those cases involved more concrete or advanced plots. (Reply, ECF No. 603 at 8–9). That may be so, but it does not follow that his own lawfully imposed sentence is thereby transformed into an extraordinary and compelling circumstance.

Nor does the terrorism enhancement itself warrant a different result. Defendant argues that U.S.S.G. § 3A1.4 dramatically increased his advisory range and contributed to an excessively severe sentence. (Mot., ECF No. 578-1 at 26–27; Reply, ECF No. 603 at 7–8). But that enhancement was applied at the original sentencing, which was affirmed on appeal, and Defendant's disagreement with its severity does not supply an extraordinary and compelling reason for release now. *Andrews*, 12 F.4th at 260–61. The Court recognizes that other courts, in different circumstances, have discussed the impact of the terrorism enhancement when evaluating compassionate-release motions. *See, e.g., United States v. Hammoud*, No. 00-00147, 2022 WL 17326071 (W.D.N.C. Nov. 29, 2022). But *Hammoud* is distinguishable. There, the court emphasized that the defendant's crimes were nonviolent, that the enhancement moved the range from 151–188 months to life, and that the defendant had already served approximately 22 years—well above the pre-enhancement range. *Id.* at *3–4. Here, by contrast, Defendant was convicted of a conspiracy to murder members of the United States military, and, as the Government notes, he has not yet served even the full pre-enhancement advisory range of 262–327 months. (Gov't Opp., ECF No. 602 at 47–48). Indeed, he is approximately 46 months shy of the lowest end of the pre-enhancement guideline range. The enhancement's substantial effect at sentencing does not make its continued consequences extraordinary for purposes of § 3582(c)(1)(A).

Defendant's reliance on *Kaziu v. United States* is also misplaced. (Mot., ECF No. 578-1 at 23–26; Reply, ECF No. 603 at 7). Whatever persuasive force that case may have in its own context, the ultimate reduction there resulted from a *de novo* resentencing after appellate remand, not from a determination that compassionate release permitted a court to revisit a lawful sentence simply because the court might impose something lower today. *See Kaziu*, 108 F.4th 86 (2d Cir. 2024);

768 F. Supp. 3d 477 (E.D.N.Y. 2025). Compassionate release is not an invitation to conduct an unbounded resentencing. *See United States v. Bryant*, 144 F.4th 1119, 1127 (9th Cir. 2025), *cert. denied*, No. 25-6636, 2026 WL 1127186 (Apr. 27, 2026) (citation omitted). This Court's task under § 3582(c)(1)(A) is not to determine what sentence it might impose if sentencing occurred today, but whether extraordinary and compelling reasons warrant disturbing the sentence that was lawfully imposed.

Finally, Defendant's attempt to draw support from *United States v. Al-Timimi*, 164 F.4th 292 (4th Cir. 2026), is unpersuasive. Defendant expressly disclaims any request to vacate his conviction, yet invokes *Al-Timimi* to suggest that his conduct was too vague, speech-based, or indefinite to justify life imprisonment. (Reply, ECF No. 603 at 10–12). But that argument, too, is nothing more than an attack on the validity or severity of the original sentence, not an extraordinary post-sentencing development. This Court is bound by the fact of Defendant's conviction and by the Third Circuit's affirmance of that conviction and sentence. *Duka*, 671 F.3d at 356. Compassionate release is not the vehicle to relitigate whether the conspiracy was sufficiently concrete, whether the evidence should be characterized differently, or whether the sentence was excessive from the outset.

In sum, whether styled as a sting-operation argument, a disparity argument, an enhancement argument, or an assertion that a life sentence would be unlikely today, Defendant's position reduces to the basic claim that his lawful sentence is too long. Under *Andrews*, that is not, without more, an extraordinary and compelling reason for compassionate release. And even assuming some room remains under § 1B1.13(b)(5) to consider aspects of sentencing circumstances, Defendant has not shown circumstances of comparable gravity to those listed in § 1B1.13(b)(1)–(4). The Court therefore rejects Defendant's length-of-sentence arguments as a basis for relief.

### ii.      Rehabilitation

Defendant also argues that his rehabilitative efforts while incarcerated support a sentence reduction. Defendant points to his institutional record, educational programming, letters of support, his asserted renunciation of the beliefs underlying his offense conduct, and studies reflecting low recidivism rates among individuals convicted of terrorism-related offenses as evidence that he has made meaningful progress and no longer poses a danger to the community. (Mot., ECF No. 578-1 at 7–19, 33–34; Reply, ECF No. 603 at 13–14).

As an initial matter, rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. Congress has expressly provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13(d). Courts within this Circuit have repeatedly recognized that, while rehabilitative efforts may be considered alongside other circumstances, they are insufficient by themselves to justify a reduction in sentence. *See, e.g., United States v. Garrett*, No. 18-125, 2022 WL 1617679, at *3 (D.N.J. May 23, 2022), *aff'd*, 2022 WL 3226615 (3d Cir. Aug. 10, 2022); *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023); *see also United States v. Thompson*, No. 20-00231, 2023 WL 3212618, at *4 (D. Utah May 2, 2023) (rehabilitation as evidenced by renunciation of gang affiliation not extraordinary and compelling).

The same is true of Defendant's reliance on recidivism data. Although Defendant cites studies suggesting that individuals convicted of terrorism-related offenses have comparatively low rates of recidivism, (Mot., ECF No. 578-1 at 8–11), such data does not itself constitute an extraordinary and compelling reason for release. *See United States v. Demming*, No. 20-395, 2025 WL 1115610, at *6 (N.D. Ohio Apr. 15, 2025) ("A low recidivism rate is not identified by the governing policy statement as an extraordinary and compelling reason for release."); *United States v. Reinhardt*, No. 09-00047, 2024 WL 3282455, at *5 (W.D.N.C. July 2, 2024) ("[L]ow risk of recidivism alone is not an extraordinary and compelling reason justifying a sentence reduction."). Such evidence may bear on the Court's individualized assessment of dangerousness and the § 3553(a) factors, but it does not transform Defendant's rehabilitation or claimed reduced risk of reoffending into an extraordinary and compelling basis for a sentence reduction.

Additionally, while the Court does not discount Defendant's efforts, Defendant's institutional record is not as uniformly positive as he suggests. He has incurred five disciplinary infractions during his incarceration. (Gov't Opp., ECF No. 602 at 56). That record tempers Defendant's characterization of his disciplinary history as "excellent" and weakens his contention that his post-sentencing conduct, standing alone or in combination with other factors, demonstrates extraordinary rehabilitation or meaningfully eliminates the Court's public-safety concerns.

Therefore, even assuming Defendant has made positive strides during his incarceration, those efforts do not transform his circumstances into the type of "extraordinary and compelling" situation contemplated by § 3582(c)(1)(A). Participation in prison programming, maintaining employment, and receiving positive evaluations from staff are commendable and expected of individuals serving federal sentences. *See United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *2 (3d Cir. Aug. 18, 2022). Nor, on this record, do Defendant's rehabilitative showing and generalized recidivism evidence outweigh the seriousness of the offense, the need for just punishment and deterrence, and the Court's obligation to conduct an individualized public-safety assessment, as outlined further in Section III.C.

### iii.    Harsh Prison Conditions

Finally, Defendant argues that the conditions of his confinement warrant a sentence reduction. (Mot., ECF No. 578-1 at 34–35). To the extent Defendant relies on the restrictive conditions imposed during the COVID-19 pandemic, courts in this District have consistently held that such conditions, standing alone, do not constitute an extraordinary and compelling reason for compassionate release. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Ali*, No. 11-752, 2022 WL 3357915, at *4 (D.N.J. Aug. 15, 2022) ("the fact that [a] [d]efendant has experienced strict lockdowns because of COVID-19 is not a reason that justifies compassionate release"); *Thomas*, 2025 WL 2300921, at *5 ("The COVID-19 pandemic—alone—is not an extraordinary or compelling reason to justify compassionate release."). Although the Court does not minimize the difficulties posed by pandemic-related restrictions within federal facilities, those conditions were widely experienced by inmates across the BOP and do not, without more, justify early release.

And there is no dispute that such conditions no longer exist. Indeed, many of the cases upon which Defendant relies granted release at or near the time of the pandemic. Further, the time period of such difficulties also represents a mere slice of the sentence served by Defendant to date and cannot warrant the relief Defendant seeks.

Defendant also suggests that the security restrictions associated with his designation—particularly his placement in a highly restrictive unit—render his conditions of confinement unusually harsh. As an initial matter, decisions as to the classification of inmates are within the sole discretion of the BOP and this Court has no authority to review such decisions. *See, e.g., Sheika v. U.S. Bureau of Prisons*, No. 06-2331, 2007 WL 576346, at *4 (D.N.J. Feb. 20, 2007) (where an inmate is imprisoned "is plainly and unmistakably within the BOP's discretion and [the court] cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy."); *United States v. Gallo*, No. 97-105-02, 1998 WL 964188, at *2 (E.D. Pa. Oct. 15, 1998) ("[A] federal district court has no authority to order confinement of a defendant in a particular type of facility; the Bureau of Prison[s] has sole discretion over that decision."). However, courts have consistently held that "harsh conditions of confinement alone" are insufficient to constitute extraordinary and compelling reasons for compassionate release. *United States v. Bouza*, No. 21-350, 2025 WL 2056484, at *2 (D.N.J. July 22, 2025) (citations omitted). Rather, a defendant must identify circumstances beyond ordinary prison conditions that are truly extraordinary.

That showing has not been made here. As courts have recognized, conditions of confinement generally cannot serve as extraordinary reasons because they are not unique to a particular inmate but instead apply broadly to those housed within a facility or classification. *United States v. Alford*, No. 08-374, 2023 WL 5529816, at *4 (W.D. Pa. Aug. 28, 2023) (citation omitted). Although exceptionally severe conditions might, in rare cases, justify relief, a defendant must demonstrate that his conditions compare unfavorably to those experienced by other inmates. *United States v. Pacheco*, 67 F. Supp. 2d 495, 498 (E.D. Pa. 1999). Defendant has not made such a showing. The restrictions he identifies stem from the BOP's management, classification, and security determinations and do not appear materially different from those imposed on other inmates housed under similar classifications. Accordingly, Defendant's complaints about the harshness of prison conditions do not establish an extraordinary and compelling reason for a sentence reduction.

### C.    § 3553 Factors

Even if Defendant could establish extraordinary and compelling reasons for relief, that does not automatically warrant the relief sought. The Court must also consider whether a sentence reduction would be consistent with the factors set forth in § 3553(a). Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a).

These factors weigh strongly against granting Defendant's Motion. Defendant was convicted of participating in a conspiracy to murder members of the United States military by carrying out an attack on the Fort Dix Army Base. The seriousness of that offense cannot be overstated. The conspiracy involved extensive discussions about attacking a United States military installation, weapons training, and efforts to acquire firearms and other weapons. The nature and circumstances of the offense therefore weigh heavily against a sentence reduction.

The Court must also consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public. Defendant received a life sentence because of the grave nature of the crime and the danger posed to the public by the conspiracy. Reducing that sentence would undermine the goals of deterrence and just punishment, particularly given the severity of the offense and the potential harm that the planned attack sought to inflict.

The Government also emphasizes that Defendant has served only eighteen years, just a portion of his life sentence. Under these circumstances, a reduction would not adequately reflect the seriousness of the offense or promote respect for the law. Nor would it sufficiently protect the public from further crimes.

For all of these reasons, the Court concludes that the § 3553(a) factors weigh decisively against a reduction in Defendant's sentence. Accordingly, even if Defendant could demonstrate extraordinary and compelling reasons for compassionate release, the Court would deny the Motion based on the § 3553(a) factors.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion for Reduction of Sentence Under the First Step Act, (ECF No. 578), is **DENIED.**

**SO ORDERED**.

**CHRISTINE P. O'HEARN**
**UNITED STATES DISTRICT JUDGE**

11